**L.N.S., Plaintiff–Appellant,**

v.

**S.W.S., Defendant–Appellee.**

**No. 12–2287.**

Court of Appeals of Iowa.

Dec. 18, 2013.

L.N.S., Nashville, Georgia, appellant pro se.

S.W.S., Boone, appellee pro se.

Considered by VOGEL, P.J., and VAITHESWARAN and MULLINS, JJ.

VOGEL, P.J.

A grandmother appeals the district court's grant of summary judgment in favor of her grandchild's mother. The court determined that due to the termination of her son's parental rights the grandmother no longer had the right to enforce a grandparent visitation order she had obtained in Georgia and she no longer had standing to pursue her claims. We first determine the issues the grandmother raises on appeal do not address the basis for the court's decision—that is, because her son's parental rights had been terminated, the grandmother no longer had standing nor an enforceable right to visitation with the child. She has therefore waived these issues. We next find the Iowa district court had subject matter jurisdiction under Iowa Code chapter 598B (2009), the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2012). Affirmed.

## I. Background Facts & Proceedings

William and Sarah were married in Iowa in 2003, and a child, R.S., was born to them in Georgia in 2004. They lived in Georgia for a period of time, then separated. Sarah and R.S. moved to Iowa in January 2006. William went to Florida, where he killed his girlfriend and was convicted of first-degree murder. He is serving a life sentence in Florida. Linda, the mother of William, is a resident of Georgia. She obtained an order from a Georgia court on September 14, 2006, granting her grandparent visitation with R.S.[1]

For over three years, Sarah followed the Georgia visitation order but discontinued the visits in late 2009. On December 29, 2009, Linda registered the Georgia grandparent visitation order in the Iowa District Court for Story County. On April 19, 2010, Linda filed a petition in Story County seeking to enforce the order, stating Sarah was not permitting her to have visitation with the child. Prior to that, on October 27, 2009, and in Story County, Sarah had filed a petition for dissolution of marriage from William, referencing the 2006 Georgia order. She amended her petition on February 5, 2010, to detail the registration and case number of the Georgia order in Iowa. Also on February 5, 2010, she filed a petition to terminate William's parental rights. All three matters were consolidated in the district court.

Linda filed petitions to intervene in the dissolution and termination proceedings. On May 5, 2010, the district court denied Linda's petitions to intervene, and she did not appeal the denials. However, the court stayed her petition to enforce the grandparent visitation order until the termination action was resolved.

On October 8, 2010, the district court terminated William's parental rights to R.S. under Iowa Code section 600A.8. The court also granted the petition for dissolution of marriage, giving Sarah sole legal custody of the child. While acknowledging the Georgia order, the district court made no provision regarding visitation for Linda in the decree. William only appealed the termination of his parental rights, which this court affirmed on appeal. *See In re Marriage of S.*, No. 10–1785, 2011 WL 2420811 (Iowa Ct.App. June 15, 2011).

On November 14, 2011, Linda again filed a motion seeking to enforce the Georgia grandparent visitation order, noting that the reason for the stay had been resolved with the termination order. Sarah responded by moving for summary judgment, alleging that because William's pa-

---

1. At the time the Georgia order was obtained, neither the mother, father, nor child were living in Georgia. Only the grandmother, Linda, was living there.

rental rights had been terminated, Linda no longer had any enforceable rights with regard to the child. She also claimed the original Georgia grandparent visitation order was unconstitutional, and therefore, unenforceable. Linda resisted the motion for summary judgment, claiming the Iowa district court did not have subject matter jurisdiction to modify or terminate the Georgia order and therefore must enforce it.

After a hearing on the matter, the district court on November 16, 2012, granted Sarah's motion for summary judgment. The court determined that when William's parental rights to R.S. were terminated, it also cut off any rights Linda may have had to grandparent visitation. The court found Linda had no standing to pursue her claims, "and she will not be permitted to pursue a petition to enforce visitation rights she no longer possesses." Moreover, the court noted that Linda did not have a statutory right to grandparent visitation in Iowa because her child, William, was not deceased. *See* Iowa Code § 600C.1(1) (providing a grandparent may seek visitation when the grandparent's child, who is the parent of the minor child, is deceased).

Linda filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), claiming the court had not addressed her assertion the Iowa courts lacked subject matter jurisdiction "to alter, modify, or terminate the visitation schedule that was established in the state of Georgia." She cited both Iowa Code chapter 598B, the UCCJEA, and the PKPA, 28 U.S.C. § 1738A. The court framed Linda's motion as seeking to address "jurisdiction in her claim for intervention," and found, "for the reasons set forth above in the Motion for Summary Judgment, that … Linda … no longer has enforceable visitation rights to the child involved in this matter and that her claim for intervention should be overruled as moot at this time." Linda now appeals.

## II. Standard of Review

Although this action was brought in equity, our review of a district court ruling on a motion for summary judgment is for the correction of errors at law. *Freedom Fin. Bank v. Estate of Boesen,* 805 N.W.2d 802, 806 (Iowa 2011). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Moore v. Davenport Civil Serv. Comm'n,* 790 N.W.2d 809, 813 (Iowa Ct.App.2010). Where a case presents solely legal issues, summary judgment is appropriate. *Kucera v. Baldazo,* 745 N.W.2d 481, 483 (Iowa 2008).

## III. Merits

**A.** Linda raises the following claims: (1) the district court should have permitted her to intervene in the action to terminate the parental rights of her son, William, (2) under 28 U.S.C. § 1738A, the PKPA, a state must give full faith and credit to a visitation decision made by another state; and therefore her grandparent visitation rights should be enforceable under the UCCJEA, Iowa Code chapter 598B.[2]

On appeal, Linda does not challenge the basis for the district court's decision—that because William's parental rights had been terminated Linda no longer had an enforceable right to visitation

---

**2.** Linda also makes a claim that Sarah's assertion the Georgia grandparent visitation order is unconstitutional is untimely because Sarah did not challenge the order at the time it was entered. The district court did not determine the Georgia order was unconstitutional and neither will this court.

with the child, nor standing to pursue the issue. Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived. *See State v. Pals,* 805 N.W.2d 767, 785 (Iowa 2011). Therefore, Linda's failure to address the court's reasoning waives those issues on appeal. *See* Iowa R.App. P. 6.903(2)(g)(3).

■ **B.** Linda first claims the district court improperly denied her request to intervene in the termination proceedings. As noted above, her motions were denied, and she did not appeal. That issue is now moot because the termination proceedings are completed. An issue is moot if it no longer presents a justiciable controversy. *In re B.B.,* 826 N.W.2d 425, 428 (Iowa 2013). Therefore, we do not address this issue.

**C.** Linda next claims the Iowa district court did not have subject matter jurisdiction to terminate her visitation rights, but must enforce her Georgia visitation order. She asserts that under the PKPA and the UCCJEA Georgia remained the child's "home state" and only a Georgia court could determine whether the grandparent visitation order remains enforceable. She claims Iowa courts can only enforce, but not modify by terminating, the order.

■ Generally, subject matter jurisdiction may be raised at any time. *Cooksey v. Cargill Meat Solutions Corp.,* 831 N.W.2d 94, 97 (Iowa 2013). The jurisdictional requirements of the PKPA present a question of subject matter jurisdiction. *In re Jorgensen,* 627 N.W.2d 550, 554 (Iowa 2001). Therefore, we will address Linda's

claims regarding the jurisdiction of the Iowa courts.

"The PKPA sets out the jurisdictional criteria which govern all interstate child custody disputes." *Bergmann v. McCullough,* 218 Ga.App. 353, 461 S.E.2d 544, 546 (Ga.Ct.App.1995). Thus, if a state makes a custody or visitation determination consistent with the PKPA, that decision should be enforced in other states. 28 U.S.C. § 1738A(a); *Evans v. Evans,* 668 F.Supp. 639, 641 (M.D.Tenn.1987). Another state may not modify that determination except as provided in the PKPA. 28 U.S.C. § 1738A(a); *Meade v. Meade,* 812 F.2d 1473, 1476 (4th Cir.1987) ("[T]he PKPA prevents a second state from modifying an initial state's order except in carefully circumscribed situations.").

Under 28 U.S.C. § 1738A(d),[3] the PKPA sets forth a federal standard for continuing exclusive custody jurisdiction—"the first state must have had proper initial custody jurisdiction when it entered its first order (according to criteria in the Act) and it must remain 'the residence of the child or of any contestant' when it later modifies that order." *Meade,* 812 F.2d at 1477; *see also* 28 U.S.C. § 1738A(d). The PKPA's state law standard asserts: "[I]n order to retain exclusive responsibility for modifying its prior order the first state must still have custody jurisdiction as a matter of its own custody law." *Meade,* 812 F.2d at 1477; *see* 28 U.S.C. § 1738A(d) (referring to subsection (c)(1)). In addition, for another state to modify a prior order, the initial state must no longer have jurisdiction or the initial state must have declined

---

**3.** 28 U.S.C. § 1738A(d) provides:

The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this sec-

tion continues to be met and such State remains the residence of the child or of any contestant.

Subsection (c)(1) provides that a court must have jurisdiction under its own state law.

to exercise jurisdiction. 28 U.S.C. § 1738A(f)(2); *Evans,* 668 F.Supp. at 641.

■ As an initial matter, we look to see if Georgia had proper initial custody jurisdiction under the PKPA when it entered the grandparent visitation order on September 14, 2006. Under 28 U.S.C. § 1738A(c)(2), Georgia was the child's home state within six months before Linda commenced the grandparent visitation proceedings in April 2006, because the child had lived there with at least one parent for at least six consecutive months before moving to Iowa in January 2006. *See* 28 U.S.C. § 1738A(b)(4). This factor is therefore satisfied.

The second factor in determining whether the grandparent visitation order was consistent with the PKPA is whether Georgia had jurisdiction under its own state law at the time the grandparent visitation order was made. *Id.* § 1738(c)(1). Under the UCCJEA, Georgia would have jurisdiction to make an initial child custody determination if Georgia was the home state of the child within six months before the commencement of a proceeding and a court of another state did not have jurisdiction. Ga.Code Ann. § 19–9–61 (2006). As noted above, at the time the grandparent visitation proceeding was commenced in April 2006, Georgia had been the home state of the child within the preceding six months. *Cf. Bergmann,* 461 S.E.2d at 547 (finding Indiana did not have jurisdiction because the child had moved away more than a year previously). Also, at that time, no other state had jurisdiction.[4] Therefore, Georgia had jurisdiction under its own laws.

Given these two factors, the Georgia grandparent visitation order was consistent with the PKPA under 28 U.S.C. § 1738A(c) at the time it was entered. Georgia's jurisdiction would therefore continue as long as Georgia had jurisdiction under its state law and Georgia remained the residence of the child or of any contestant.[5] 28 U.S.C. § 1738A(d); *see also White v. Harper,* 807 N.W.2d 289, 293–94 (Iowa Ct.App.2011).

■ Linda registered her grandparent visitation order in Iowa on December 29, 2009. *See* Iowa Code § 598B.305(1) (providing a child-custody determination of another state may be registered in Iowa).[6] When a child-custody determination has been registered in Iowa, it may only be modified in accordance with article II of the UCCJEA, which encompasses sections 598B.201 to .210, that is, Iowa's jurisdictional and procedural requirements. *Id.* § 598B.306(2). "Modification means a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." *Id.* § 598B.102. "Modification" therefore encompasses the district court's determination that Linda's rights were cut off with the termination of the child's father's rights, as the finding "changed, replaced or superseded" Linda's Georgia order. Additionally, under the PKPA, Iowa could supersede the Georgia grandparent visitation order only if (1) Iowa had jurisdiction to make such a determination, and (2) Georgia no longer had jurisdiction. 28

**4.** Iowa was not the child's home state because the child had not yet lived here for six consecutive months. *See* 28 U.S.C. § 1738A(b)(4).

**5.** Linda, as a grandparent, would be considered a contestant under the PKPA. *See* 28 U.S.C. § 1738A(b)(2).

**6.** A visitation order is a child-custody determination within the meaning of the UCCJEA. Iowa Code § 598B.102(3); *G.P. v. A.A.K.,* 841 So.2d 1252, 1255 (Ala.Civ.App.2002).

U.S.C. § 1738A(f); *see also LaRose v. La-Rose,* 71 So.3d 651, 658 (Ala.Civ.App.2011) (noting that suspending visitation could potentially result in permanently terminating visitation, which would effect a modification under the UCCJEA of an out-of-state grandparent visitation order). In considering whether Iowa has jurisdiction, and whether Georgia no longer has jurisdiction, we again look to the UCCJEA.

Iowa has jurisdiction to modify, meaning to change, replace, or supersede, a child-custody determination of another state if Iowa has jurisdiction to make an initial determination under section 598B.201(1)(a) or (b). Iowa Code § 598B.203. Iowa has jurisdiction under section 598B.201 (1)(a) if it is the home state of the child on the date of the commencement of the proceeding. In a modification proceeding, we consider the date the petition was filed. *Peterson v. Peterson,* 965 So.2d 1096, 1097 (Ala.Civ. App.2007). Here, Sarah filed a petition in Iowa for dissolution of marriage from William on October 27, 2009, and a petition to terminate William's parental rights on February 5, 2010. The child has been living in Iowa since January 2006, and we find Iowa is now the child's home state. *See* Iowa Code § 598B.102(7) (defining "home state"). For this reason, Iowa currently has jurisdiction under section 598B.201 (1)(a).

Additionally, Iowa may modify, by changing, replacing, or superseding, a child-custody determination of another state when (1) the other state determines it no longer has exclusive, continuing jurisdiction or Iowa would be a more convenient forum, or (2) Iowa, or the court of another state, determines "that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." *Id.* § 598B.203. The second requirement for modification in Iowa is met because neither R.S., the parents, nor

"any person acting as a parent" presently reside in Georgia. R.S. and Sarah live in Iowa. The father lives in Florida. There is no evidence that Linda, living in Georgia, was "acting as a parent." *See Peterson,* 965 So.2d at 1100 (finding that although children had been living with grandparents, they did not have legal custody and therefore had not been acting as parents within the meaning of the UCCJEA); *In re S.J.A.,* 272 S.W.3d 678, 684 (Tex.Ct.App. 2008) (finding stepmother did not have legal custody of children, and therefore had not been acting as a parent under the UCCJEA); *but see Schirado v. Foote,* 785 N.W.2d 235, 242 (N.D.2010) (finding grandparents who had been caring for child could claim a right to legal custody, and therefore were not precluded from asserting they had been acting as parents under the UCCJEA). Therefore, under this prong, Iowa has jurisdiction to modify, by changing, replacing, or superseding, the 2006 Georgia visitation order because Iowa is now the child's home state, neither the child nor either parent presently reside in Georgia, and there is no one else, including Linda, who has been acting as a parent. *See* Iowa Code § 598B.203.

The final requirement for Iowa courts to effect a change of the Georgia grandparent visitation order under the PKPA is whether Georgia no longer has jurisdiction. *See* 28 U.S.C. § 1728A(f)(2). Under the UCCJEA, Georgia has exclusive, continuing jurisdiction until (1) Georgia determines neither the child, the child's parents, or a person acting as a parent has a significant connection with Georgia and substantial evidence is no longer available in Georgia concerning the child's care, protection, training, and personal relationships, or (2) Georgia or another state determines that neither the child, the child's parents, or a person acting as a parent presently reside

in Georgia.[7]  Ga.Code Ann. § 19–9–62.

Thus, Georgia's exclusive, continuing jurisdiction ceases if another state determines that R.S., the parents, or a person acting as a parent no longer reside in Georgia.  Consistent with our findings noted above, there is no evidence of any person acting as a parent living in Georgia.  The evidence shows that R.S. and Sarah live in Iowa, and William is incarcerated in Florida.  We therefore conclude that under the UCCJEA Georgia no longer has jurisdiction.  Under the PKPA and the UCCJEA, Iowa has jurisdiction, such that an Iowa court could change, replace or supersede the Georgia grandparent visitation order.  When the district court found Linda's previously held visitation rights were terminated with the termination of her son's parental rights, it modified the Georgia order by superseding it.  This in turn gave the Iowa court authority to deny Linda's petition to enforce the Georgia order.  *See State v. Mandicino*, 509 N.W.2d 481, 483 (Iowa 1993) (explaining the distinction between a court's subject matter jurisdiction and authority to hear a particular case.)

We therefore affirm the decision of the district court dismissing the petition for enforcement of the Georgia visitation order.

**AFFIRMED.**

---

7.  The Georgia statute specifically provides:

[A] court of this state which has made a child custody determination consistent with [Georgia code sections] has exclusive, continuing jurisdiction over the determination until:

. . . .

(2) A court of this state or a court of another state determines that neither the child nor the child's parents or any person acting as a parent presently resides in this state.