**IN THE COURT OF APPEALS OF IOWA**

No. 15-1112
Filed September 23, 2015

**IN THE INTEREST OF R.S. AND D.S.,**
**Minor Children,**

**A.C., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Mitchell County, Karen K. Salic, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights to her children, R.S. and D.S. **AFFIRMED.**

Nicholas Larson of Larson Law Office, P.L.L.C., Osage, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Mark L. Walk, County Attorney, for appellee State.

Patrick Rourick, Saint Ansgar, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

A mother appeals the juvenile court's termination of her parental rights to her children, R.S. and D.S.

**I. Factual and Procedural Background**

D.S., born in 2003, and R.S., born in 2007, lived with their biological mother and father in Iowa until October 2013, at which time the parents separated. The father moved to Minnesota where his parents lived. The mother soon took a paramour, and he moved in with her and the children. In early 2014, the children came to the attention of the Iowa Department of Human Services (IDHS) when the children's paternal grandmother noticed severe bruising on one of the children and scratch marks on the other. The grandmother confronted the mother over the phone, and the mother admitted she and the paramour would commonly hit the children as a means of discipline. The mother explained the bruises were a result of the paramour hitting the child with a belt. She explained that she also hit the children "as hard as [she] can" and had "hit [D.L.] even harder" than the blows that caused the bruises.

Following an investigation, Child Protective Services determined the allegations of physical abuse were founded as to both the mother and the paramour.[1] The children were adjudicated children in need of assistance (CINA) on March 20, 2014. The same day, the court removed the children from the mother's care in Iowa and placed them with their paternal grandmother and her husband in Minnesota pursuant to a safety plan and under the Iowa Interstate

---

[1] Later in Iowa district court, the paramour was convicted of child endangerment and the mother received a deferred judgment for child endangerment.

Compact on Placement of Children (ICPC). *See* Iowa Code § 232.158 (2015). The mother moved to Georgia with her paramour on March 28. Despite moving a great distance away from the children and living with her paramour—with whom the children were to have no contact—the mother asked for additional visitation. She returned to Minnesota on three occasions between March and August 2014. During one of those visits, she told the children she would relocate to Iowa and find a job so she could be with them. She instead left the children again and returned to Georgia and her paramour.

The mother moved to Minnesota to live with her mother in August 2014. She began working at a local gas station. She participated in some visitation with the children, who still lived with the paternal grandmother, but did not regularly participate in other services offered or regularly attend the children's school events or medical appointments. She claimed she was no longer involved with her paramour. However, in October 2014, she reported to her case coordinator that she was pregnant with the child of her paramour and that she and her paramour planned to buy a house together in Minnesota. The case coordinator wrote in a report, "As [the paramour] has been [a] barrier previously to the children's safety, it is unclear if [the mother] is concerned for the children's safety."

In January 2015, the mother once more returned to Georgia to be with her paramour. After approximately two months in Georgia, the mother returned to Minnesota and purchased a house with her paramour, who was waiting to be discharged from parole in Georgia before permanently moving to Minnesota.

The juvenile court held a hearing on the State's termination petition on May 20, 2015. It terminated the mother's parental rights to both children on May 26. It found:

> [The mother] is unwilling to give up her relationship with [the paramour] who physically abused her children and set in motion the circumstances leading to the removal of her children from her care. . . . In addition to not addressing her own issues, [the mother] has not demonstrated even a minimal amount of interest in meeting the children's needs. She does not speak directly with providers, does not take advantage of additional opportunities to . . . see the children for visits or at their various appointments.

It terminated the mother's rights pursuant to Iowa Code sections 232.116(1)(d), (e), and (f) as to R.S. and sections 232.116(1)(e), (f), and (i) as to D.S.[2] The mother appeals.

## II. Standard of Review

Questions of subject matter jurisdiction are reviewed de novo. *In re B.C.*, 845 N.W.2d 77, 79 (Iowa Ct. App. 2014). We review an order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Subject Matter Jurisdiction

The mother asserted in her post-trial motion in juvenile court and in this appeal that Iowa courts lack subject matter jurisdiction over the termination proceedings under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA). *See* Iowa Code ch. 598B. She reasons "[t]he record is unclear how long [she] lived in Mitchell County" and "the parties do not [currently] live in Iowa." The issue of subject matter jurisdiction may be raised at any time. *See B.C.*, 845

---

[2] On the same date, the juvenile court terminated the children's father's parental rights pursuant to Iowa Code section 232.116(1)(a) because the father consented to termination and section 232.116(1)(f) because issues with the father's paramour made it impossible for the children to be returned to his custody. The father does not appeal.

N.W.2d at 79. Jurisdictional requirements are mandatory, not discretionary. *See id.* A court that lacks subject matter jurisdiction has no authority to hear a case and must dismiss the petition. *See id.*

Subject matter jurisdiction may be conferred only by constitution or statute. *See In re J.M.*, 832 N.W.2d 713, 719 (Iowa Ct. App. 2013). The UCCJEA is "the exclusive jurisdictional basis for making a child-custody determination[3] by a court of this state." Iowa Code § 598B.201(2). The juvenile court held it had jurisdiction under Iowa Code section 232.109,[4] but it did not address the jurisdictional requirements of the UCCJEA or the Interstate Compact.

The UCCJEA provides, "[A] court of this state has jurisdiction to make an initial child-custody determination only if . . . [t]his state is the home state[5] of the child on the date of the commencement of the proceeding . . . ." Iowa Code § 598B.201(1)(a). Iowa courts made an initial custody determination on March 20, 2014—the date of the CINA adjudications—placing the children in the custody of IDHS "for placement in the home of a relative." The record shows the children were living with their mother in Osage, Iowa when the CINA investigation and petitions were initiated in early 2014. The children had been living with both

---

[3] A "child-custody determination" is any "judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." Iowa Code § 598B.102(2).

[4] "The juvenile court shall have exclusive jurisdiction over proceedings under this chapter to terminate a parent-child relationship and all parental rights with respect to a child." Iowa Code § 232.109.

[5] A child's "home state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child-custody proceeding." Iowa Code § 598B.102(7).

parents for years prior to the parents' separation in October 2013, and they had been attending school in Osage during that time.

The record supports the conclusion that Iowa was the home state of both children at the time of the initial child-custody determination—i.e., the children's CINA adjudications, which resulted in their removal from their mother's care and placement with their paternal grandparents in Minnesota. *See* Iowa Code § 598B.102(8) (defining an initial determination as "the first child-custody determination concerning a particular child"). The juvenile court had subject matter jurisdiction over the CINA proceedings. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, 705 (Iowa Ct. App. 2013) ("Iowa has jurisdiction under section 598B.201(1)(a) if it is the home state of the child on the date of the commencement of the proceeding."); *see also In re A.J.*, No. 14-0118, 2014 WL 2432381, at *2 (Iowa Ct. App. May 29, 2014) (applying section 598B.201(1) to CINA adjudication proceedings).

However, at the time the petition for termination was filed, no child or parent lived in Iowa. The record shows the children, father, and paternal grandparents—acting as the children's parents—have all lived in Minnesota since early 2014. The mother began to move between Minnesota and Georgia in March of 2014. There is no indication or suggestion in the record she lived in Iowa at any time following her first move to Georgia nor that the children lived in Iowa at any time following their placement with their grandparents in Minnesota. The juvenile court's jurisdiction to conduct the termination proceedings would normally require exclusive, continuing subject matter jurisdiction pursuant to Iowa Code section 598B.202. *See A.J.*, 2014 WL 2432381, at *2 (concluding subject

matter jurisdiction over termination action derives from exclusive, continuing jurisdiction over initial custody determination in CINA adjudication proceedings). Iowa courts have exclusive, continuing subject matter jurisdiction until "[a] court of this state . . . determines that the child, the child's parents, and any person acting as a parent[6] do not presently reside in this state." Iowa Code § 598B.202(1)(b). The Iowa juvenile court has made the finding contemplated by Iowa Code section 598B.202(1)(b), which ordinarily would end Iowa's exclusive, continuing jurisdiction.

However, in this case, the juvenile court ordered the children's placement with their grandparents pursuant to the ICPC.[7] *See* Iowa Code § 232.158. The ICPC provides in part, "The sending agency[8] shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state . . . ." Iowa Code § 232.158(5)(a).

This provision permits a juvenile court to place children with out-of-state relatives and retain its jurisdiction even if all parties move out of the state. The procedures and requirements of the ICPC allow the sending agency to have access to information about the children even while they reside out of state. *See id.* § 232.158(1)(c), (5)(a) (providing the sending agency with "the most complete

---

[6] A "person acting as a parent" is a person or entity with both physical care and legal custody of the child. *See* Iowa Code § 598B.102(13). Though IDHS had legal custody of the child and resided in Iowa, it did not have physical care of the children. The grandparents, who assumed physical care of the children, resided at all times in Minnesota.

[7] The juvenile court expressly noted in its ruling on the mother's post-trial motions, "The children were placed with relatives in Minnesota first under a safety plan and later by court order through ICPC."

[8] A "sending agency" is "a . . . state, officer or employee thereof . . . or other entity which sends . . . any child to another . . . state." Iowa Code § 232.158(2)(b).

information on the basis of which to evaluate a projected placement" and jurisdiction "sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child"); *see also id.* §§ 598B.201(1)(b)(2), .202(1)(a) (delineating considerations of "substantial evidence . . . concerning the child's care, protection, training, and personal relationships" under the UCCJEA).

Even if the children now have a different home state pursuant to the UCCJEA, we determine the Iowa court, by placing the children pursuant to the ICPC, has retained jurisdiction as "if the child[ren] had remained in [Iowa]." *See id.* Therefore, the juvenile court's jurisdiction was not terminated by the operation of Iowa Code section 598B.202(1)(b), and the juvenile court retained subject matter jurisdiction over the termination action.

Though we do not agree with the juvenile court's ruling denying the challenge to subject matter jurisdiction by reference to section 232.109, we affirm the holding based on our application of the UCCJEA and the ICPC. We proceed to the merits of the mother's appeal.

**IV. Discussion**

Review of a termination order is a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we determine "if a ground for termination exists under section 232.116(1)." *Id.* Second, we determine whether termination is in the child's best interests as described section 232.116(2). *See id.* Lastly, we consider whether the mitigating factors enumerated in section 232.116(3) persuade us not to terminate the parent's rights. *See id.*

Facts supporting termination must be established by clear and convincing evidence. *See* Iowa Code § 232.117(3). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

As to the first step, we agree with the juvenile court that Iowa Code section 232.116(1)(f) supports termination of the mother's rights to both children. Section 232.116(1)(f) provides the juvenile court may order the termination of a parent's rights with respect to a child if the court finds that all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.[9]

The children were eight and eleven at the time of termination, satisfying subparagraph (1). Both children were adjudicated CINA on March 20, 2014, satisfying subparagraph (2). Both children were removed from their mother's care pursuant to the adjudicatory order on March 20, 2014. They were therefore removed from her care for fourteen consecutive months prior to termination,

---

[9] Children cannot be returned to their parents' custody if they would be exposed to "some harm which would justify the adjudication of the child as a child in need of assistance." *See* Iowa Code § 232.102(5)(a)(2); *see also In re A.S.*, No. 12-1534, 2012 WL 5356160, at *3 (Iowa Ct. App. Oct. 31, 2012) ("The State meets its burden to prove this element if it presents clear and convincing evidence the children have suffered or are imminently likely to suffer an adjudicatory harm upon their return.").

satisfying subparagraph (3). The children cannot be returned to the mother's custody without exposure to her paramour, who physically abused the children and with whom the mother has recently purchased a house. Because this risk exposes the children to the very harm that resulted in their CINA adjudications in the first place, the children cannot be returned to the mother's custody at this time, satisfying subparagraph (4).

Next, we agree with the juvenile court that termination is in the children's best interests. *See* Iowa Code § 232.116(2). We consider the children's safety and their physical, mental, and emotional needs. *Id.* The mother's failure to commit to the children's needs and her broken promises to leave her paramour and return to care for her children indicate the children need a dependable and permanent caretaker as soon as possible.

None of the mitigating factors in Iowa Code section 232.116(3) dissuade us from acting on our best-interests determination. The children did not object to termination, and there is no evidence the children are so close to their mother that termination would be detrimental. The mother suggests the paternal grandparents "would be a good alternative for relative placement or guardianship." This suggestion does not strength the mother's argument as to any of the factors discussed in section 232.116(3).

Because Iowa Code section 232.116(1)(f) supports termination of the mother's parental rights and termination is in the children's best interests, we affirm.

**AFFIRMED.**