**IN THE COURT OF APPEALS OF IOWA**

No. 16-1922
Filed July 6, 2017

**TONY DEIMAN,**
        Petitioner-Appellant,

**vs.**

**MELISSA LEPPERT,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dubuque County, Michael J.

Shubatt, Judge.


        A father appeals from a district court decree awarding physical care of his

daughter to the child's mother.  **AFFIRMED.**


        Natalia H. Blaskovich of Reynolds & Kenline, L.L.P., Dubuque, for

appellant.

        Melissa Leppert, Dubuque, appellee pro se.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals a district court decree granting physical care of his daughter to the child's mother.

## I.    *Background Facts and Proceedings*

Tony Deiman and Melissa Leppert are the unmarried parents of a child, born in 2006.  Deiman was a resident of Minnesota.  Leppert and the child were residents of Iowa.[1]  The child lived with Leppert exclusively and continuously.  When the child was eight years old, Deiman petitioned for custody, visitation, and child support.  Leppert failed to respond to Deiman's discovery requests and, as a sanction, was prohibited from offering trial evidence other than her own testimony.

---

[1] We have independently examined the Uniform Child Custody Jurisdiction and Enforcement Act to ensure the Iowa courts have subject matter jurisdiction.  *See* Iowa Code § 598B.201(1) (2015) (setting forth circumstances under which this State "has jurisdiction to make an initial child-custody determination"); *In re Jorgensen*, 627 N.W.2d 550, 554-55 (Iowa 2001) (stating the question of whether a court has subject matter jurisdiction may be raised at any time).  This becomes important because, in 2012, a custody and visitation petition was filed in Minnesota after Deiman's sister learned that the child was left in the care of a known sex abuser.  The Minnesota court issued a temporary protective order restraining the abuser from having contact with the child.  The court also set forth a visitation schedule for Deiman and the child.

"Iowa has jurisdiction to modify, meaning to change, replace, or supersede, a child-custody determination of another state if Iowa has jurisdiction to make an initial determination under section 598B.201(1)(a) or (b)." *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 705 (Iowa Ct. App. 2013) (citing Iowa Code § 598B.203).  Section 598B.201(1)(a) provides Iowa courts with jurisdiction to make an initial determination where Iowa "is the home state of the child on the date of the commencement of the proceeding . . . ."  Deiman did not seek "full custody" in the Minnesota proceeding because his job as an over-the-road truck driver kept him away from the home for "a month at a time."  Additionally, the Minnesota order expired before Deiman filed suit in Iowa.  Finally, the child had been living in Iowa for several years, making Iowa the child's "home state." *See* Iowa Code § 598B.102(7).  For all these reasons, Iowa has jurisdiction under section 598B.201(1)(a).

At trial, Deiman testified to a litany of improper behaviors by Leppert, some dating back several years. For her part, Leppert insisted the child would be better off in the care of the parent with whom she had always lived.

The district court questioned the child about her preferences. The child expressed a desire to remain with her mother. The court granted Leppert physical care.

Deiman moved for enlarged findings and conclusions. The court expanded the decree but declined to alter its conclusion that Leppert should exercise physical care. Deiman appealed.

## II. *Physical Care*

Deiman argues the district court (1) failed to consider several relevant statutory factors as well as the evidence supporting them, (2) gave excessive weight to the child's preference, and (3) gave too much credence to Leppert in light of her refusal to follow prior court orders. We will address these arguments together.

Iowa Code section 598.41(3) sets forth several factors for consideration in child custody determinations, including whether "both parents have actively cared for the child," "each parent would be a suitable custodian," "the custody arrangement is in accord with the child's wishes," and "the parents can communicate with each other regarding the child's needs." *See* Iowa Code § 598.41(3) (a), (c), (d), (f). These factors have been applied to children of unmarried parents. *See id.* § 600B.40(2); *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (considering the factors contained in Iowa Code section 598.41(3)).

As noted, Leppert served as the child's primary caretaker for the child's entire life. As the district court stated, she was an imperfect parent. But many of the concerns raised by Deiman were no longer factors affecting the child's welfare or were overstated.

Deiman asserted Leppert exposed the child to a known pedophile. Her conduct formed the basis of the Minnesota petition filed several years earlier. As noted, the Minnesota court issued a temporary restraining order prohibiting Leppert and the child from having contact with the sex abuser. Deiman offered no evidence that Leppert violated the restraining order. He elected not to seek custody of the child at that time. We view Deiman's inaction as an implicit acknowledgment that he deemed the child safe in Leppert's care.

Deiman also testified extensively to facts surrounding Leppert's older daughter, fathered by another man. He called her as a trial witness. The child testified to sexual abuse by her father and stated Leppert encouraged the abuse. However, Leppert only lived with the child for the first five years of the child's life. The allegations of sex abuse came to light well after that period. Specifically, Leppert testified she left the child's father after suffering physical abuse at his hands and she had no further relationship with him or with her daughter until the Minnesota counterpart to the Iowa Department of Human Services contacted her in approximately 2012. She cooperated with the agency investigation. Her parental rights to the child were not terminated. Ultimately, Leppert decided to sign voluntary guardianship papers transferring the child to her paternal grandmother's care. The district court found, "Whatever happened, the

investigation failed to reveal any culpability on Melissa's part." We find support for this determination on our de novo review of the record.

Deiman next pointed to Leppert's criminal history. Leppert acknowledged a 1993 theft charge and admitted to a more recent citation for failure to have valid insurance as well as two citations for failure to have a valid driver's license. The latter was based on her non-payment of child support for the older child. Although we recognize Leppert was less than forthcoming about her criminal past, we are not persuaded her history rendered her an unsuitable parent. To the extent Deiman argues the court should have discounted Leppert's testimony based on her non-compliance with prior court orders, her non-compliance was addressed in the prior sanctions ruling. The district court was free to give her trial testimony the weight it saw fit. *See In re Estate of Sheldahl*, No. 04-0800, 2005 WL 2756066, at *3 (Iowa Ct. App. Oct. 26, 2005) ("In assessing the sufficiency of the evidence, we note it is the district court's duty, as the finder of fact, to sort out the credibility of witnesses and to assign the evidence presented whatever weight it deems proper.").

Deiman also suspected Leppert of drug abuse. But Leppert denied using illegal drugs and pointed to two negative drug tests. She also denied any drug use by her sister, whose home was found to have contained a methamphetamine laboratory and testified the child had not spent time with this relative for two years. On this record, we cannot conclude Leppert's criminal history warranted uprooting the child from the home and environment she had come to know and appreciate.

This brings us to the child's testimony. She unequivocally expressed a desire to remain with her mother in Dubuque, Iowa. She testified her least favorite thing about visiting her father was staying away from her mom and she described being close to her mother, her friends, and her half-brothers in Dubuque. The child also had nothing negative to say about her mother's long-term, live-in boyfriend. In contrast, the child's description of her time with her father was non-committal.

The child was old enough to express her preferences. *See McKee v. Dicus*, 785 N.W.2d 733, 737-38 (Iowa Ct. App. 2010); *In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000). The district court saw and heard the child testify and gave her testimony credence. Because we do not have the ability to evaluate witness demeanor, we give weight to the district court's assessment. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

We recognize Leppert denied Deiman visits and was less than effective in facilitating telephone communication between father and child. But this development was of relatively recent vintage. Deiman acknowledged Leppert initially allowed him to see the child every weekend. Leppert restricted visits only after Deiman threatened to keep the child. Following the filing of the Iowa petition, the visitation issue was mediated and Deiman exercised intermittent, if not regular, visitation with the child in the year preceding trial.

The district court considered the visitation problems in deciding which parent should exercise physical care. The court found Leppert "allowed [Deiman] visitation for many years without a court order, but visitation [did] not always [go] smoothly." To resolve the pretrial issues, the district court prescribed a visitation

schedule and instructed Leppert to "be less controlling when it comes to [the child's] communication with" Deiman. The court ordered Leppert to "allow a reasonable amount of communication" between Deiman and the child and ordered her not to "monitor, control or attempt to participate in the communication." The court defined "reasonable" communication as "not more than once per day, if desired." The district court appropriately resolved Deiman's visitation concerns without granting him physical care.

The court also effectively addressed communication issues by granting Deiman joint custody of the child. Joint custody requires adequate communication between the parents about the child's welfare. To the extent Leppert failed to keep Deiman informed of key developments in the child's life, she is now required to do so.

In its post-trial ruling, the district court stated it "considered the extent to which each party has supported [the child's] relationship with the other party and all of the factors in Iowa Code § 598.41(3) in determining custody." The court concluded:

> Most, but not all, of those factors supported an award of primary care to [Leppert]. As stated in the ruling, it was significant to the Court that [the child]. did not appear to have been coached when asked about how her parents speak about one another. [The child] is very happy in [Leppert's] care and does not want to start a new life in Minnesota. While the Court gave some weight to her preference to stay with [Leppert], it was not an overwhelming amount of weight given [the child's] age.
>     . . . .
>     . . . . The bottom line is that [the child] is happy, relatively healthy, is doing satisfactorily in school, has her basic needs met, has friends in this community and is involved in activities she enjoys. Even with [Leppert's] shortcomings as a parent, which the Court recognizes (although not to the extent argued by [Deiman]), the Court's ultimate conclusion after seeing and hearing from both

parties was, and is, that [the child's] best interests are not served by uprooting her so that she can be in [Deiman's] primary care in another state.

We agree with this conclusion. We affirm the district court decree in its entirety. Deiman's request for appellate attorney fees is denied because he is not the prevailing party. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation..., the court may award the prevailing party reasonable attorney fees"). *Cf. In re Marriage of Johnson*, 781 N.W.2d 553, 560 (Iowa 2010); *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa Ct. App. 1981).

**AFFIRMED.**