**IN THE COURT OF APPEALS OF IOWA**

No. 24-0873
Filed December 18, 2024

**IN THE INTEREST OF K.L.,**
**Minor Child,**

**D.P., Guardian,**
        Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton,
Judge.


        A guardian appeals a jurisdictional order.  **AFFIRMED.**


        Camille Kahn of Brubaker, Flynn & Darland, P.C., Davenport, for appellant
guardian.

        Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney
General, for appellee State.

        G. Brian Weiler, Davenport, attorney and guardian ad litem for minor child.


        Considered by Schumacher, P.J., Sandy, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**GAMBLE, Senior Judge.**

A child's guardian appeals a juvenile court's jurisdictional order. Based on controlling statutory authority, we affirm.

In March 2021, the State of Texas removed K.L. from her parents' custody and placed her with maternal aunt D.P. (an Iowa resident) as possessory conservator under the Interstate Compact on the Placement of Children (ICPC).[1] Texas also placed M.C., K.L.'s older half-sibling, with D.P. as possessory conservator. In January 2022, a Texas court terminated the parental rights of both K.L.'s parents, "continued [D.P.] as the possessory conservator of the child," and appointed the Texas Department of Family and Protective Services (TDFPS) "permanent managing conservator" for K.L.

On May 23, 2023, the Texas court entered a final order. This order found Texas is the home state of the child and the Texas court had jurisdiction under Subchapter C, Chapter 152, Texas Family Code, which is Texas's version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The order said Texas "has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case." The final order released TDFPS from further duties, named D.P. permanent managing conservator (which has statutory annual reporting requirements), and closed the case for K.L.

---

[1] Under Texas law, a possessory conservator has essentially the right to physical care of the child, and a managing conservator also has the rights and duties generally associated with legal custody; these designations appear akin to Iowa's limited guardianships and guardianships. *Compare* Tex. Fam. Code Ann. §§ 153.371, .376 (West 2022), *with* Iowa Code §§ 232D.102(8), .401–.402 (2023).

K.L continued to reside in Iowa with M.C. and D.P. D.P. planned to adopt K.L., but she wanted to adopt both children at once. So she waited for termination of parental rights in M.C.'s Texas child welfare case. M.C.'s Texas case remained ongoing, through which the child's father—a registered sex offender—received visitation. M.C. later disclosed the father sexually abused her. D.P. expressed a great deal of frustration with Texas authorities due to the father's ongoing contact with M.C.

In early 2024, D.P. contacted the Iowa Department of Health and Human Services (HHS), asserting problems dealing with TDFPS and court services relating to M.C. TDFPS terminated M.C.'s ICPC placement and removed the child to Texas. HHS filed an application for removal of K.L. from D.P.'s custody, citing concerns of D.P.'s mental health based on her claims about TDFPS. On March 21, 2024, the juvenile court entered an ex parte removal order.

The day after the removal, Texas notified Iowa of a jurisdictional issue over K.L.'s child welfare case. The State filed a child-in-need-of-assistance petition in the juvenile court for Scott County, Iowa, including a sworn statement noting three-year-old K.L. had resided in Iowa since March 2021. K.L.'s guardian ad litem (GAL) filed reports with the court objecting to the child's removal from D.P.'s home, noting D.P. was understandably frustrated with the ongoing proceedings for M.C. and the harm M.C.'s continued visitation with her father was causing the child. The GAL also criticized HHS for failing to make any efforts to prevent K.L.'s removal from the only home the child can remember, drawing attention to the trauma the removal was causing to the child.

The juvenile court conducted a removal hearing and filed a removal order on April 24, 2024. In its removal order, the juvenile court stated, "The Court has temporary emergency jurisdiction of the parties and jurisdiction of the subject matter herein. Jurisdiction may be an issue later in this case and it is likely a hearing will need to be held with the juvenile court in Texas under Iowa Code 598B, the [UCCJEA]." The court credited the State's witnesses and found, "[W]hen a guardian asks that children be removed because of mental health issues, stating she can no longer care for the children, there is an imminent risk of harm. The guardian also has a history of mental illness the extent of which is not known at this time." The juvenile court removed K.L. from D.P.'s care and placed the child in the temporary custody of HHS for relative placement pending further hearing.

Shortly after the removal hearing and order, the juvenile court conducted a UCCJEA jurisdictional hearing with representation from Iowa and Texas. The Texas court stated it "want[ed] to assert exclusive continuing jurisdiction" under the UCCJEA. On May 9, 2024, The Iowa court "decline[d] to assert jurisdiction over [K.L.]" and deferred to Texas's jurisdiction, citing K.L.'s sibling connections (M.C. and a new half sibling) and the Texas courts' history with the child and family in the original custodial action.

D.P. appeals the jurisdictional finding, seeking to have K.L. returned to the jurisdiction of Iowa's courts. Our review is de novo. *In re B.C.,* 845 N.W.2d 77, 79 (Iowa Ct. App. 2014).

As a threshold matter, the State argues that Texas, as the sending agency, retains jurisdiction over the child under Article V(a) of the ICPC. Texas and Iowa

have both adopted the ICPC. *See* Iowa Code § 232.158; Tex. Fam. Code Ann. § 162.102. Iowa Code section 232.158(5)(a) provides:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state.

We recognize none of these events have occurred. D.P. has not adopted K.L., who is still a young child. But Texas closed its case on K.L., and we question whether Texas's jurisdiction over child custody survives the final order in the absence of an examination of jurisdiction under the UCCJEA. *C.f. In re R.S.*, No. 15-1112, 2015 WL 5577597 at *3–4 (Iowa Ct. App. Sept. 23, 2015) (retaining subject matter jurisdiction of an open CINA case with an out-of-state placement as if the child had remained in Iowa under section 232.158(5)(a), even though the child and persons acting as parents no longer resided in Iowa as understood under the UCCJEA).

D.P. argues Iowa should exercise jurisdiction under the UCCJEA because Iowa is the home state of the child and the evidence of the child's care is in Iowa. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, at 704–06 (Iowa Ct. App. 2013). We agree Iowa is now the home state as defined in section 598B.102(7) because K.L. has lived with D.P., a person acting as parent, for at least six months. Iowa would have jurisdiction to make an initial custody determination under section 598B.201(1)(a). But Texas already made an initial custody determination when it placed the child in Iowa. So, the Iowa juvenile court invoked temporary emergency jurisdiction

under section 598B.204 for the removal until jurisdiction could be determined under the UCCJEA. *See* Iowa Code § 598B.204(1), (4).

Because Texas claims jurisdiction, we must determine if Iowa courts have exclusive, continuing jurisdiction under section 598B.202(1) which provides:

> Except as otherwise provided in section 598B.204, a court of this state which has made a child-custody determination consistent with section 598B.201 or 598B.203 has exclusive, continuing jurisdiction over the determination until any of the following occurs:
> a. A court of this state determines that the child does not have, the child and one parent do not have, or the child and a person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.
> b. A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

*Id.* § 598B.202(1); *accord* Tex. Fam. Code Ann. § 152.202. In short, the original jurisdictional state retains jurisdiction until specific circumstances occur.

D.P. argues both she and K.L. resided in Iowa at the time jurisdiction was asserted, which both courts acknowledged at the hearing.[2] And D.P. urges Iowa should assume jurisdiction, noting "[a]ll of [K.L.]'s significant connections are here in Iowa, and that is where [K.L.] has been for essentially her entire life," while K.L.'s only connection to Texas was M.C. and a new younger sibling.

Texas asserts its jurisdiction, claiming the child has a significant connection with Texas because her siblings were in TDFPS custody, and substantial evidence on the child's family exists and is available in the Texas court. Texas further

---

[2] When removed from D.P.'s care, K.L. was placed with another maternal relative in Iowa. That family had given their notice requesting the child be moved from placement just before the jurisdictional hearing.

asserted that HHS's removal of the child from D.P.'s care interrupted the "person acting as a parent" relationship for purposes of the statute.

At the jurisdictional hearing, the State argued the sibling connection between K.L. and M.C. favored Texas. However, the State conceded that without the removal, Texas may not have had continuing jurisdiction under section 598B.202(1). Specifically, the State argued, "Up until the removal, we believed that this argument may not have worked, but since the removal, and the imminent harm found if the child were to remain in the placement of [D.P.], then the significant relationship is broken, if there ever was one between the child and [D.P.]."[3]

Perhaps the relationship between D.P. and the child was temporarily interrupted by the removal, but we believe the connection between D.P. and her prospective adoptive daughter remains significant. And given that K.L. lived with D.P. in Iowa for most of her life, substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

---

[3] We harbor strong reservations about using HHS's removal order interrupting the parent-child relationship between D.P. and K.L. to provide the mechanism by which Texas would retain jurisdiction over the child despite her strong ties to Iowa and residence here with a person acting as parent. But D.P. could not challenge the removal order until a final order was entered in the CINA case. *See* Iowa Rs. App. P. 6.101(1), 6.102(1) (providing for the "appeal from a *final* order or judgment in a . . . child in need of assistance proceeding" (emphasis added)); *In re C.S.*, 516 N.W.2d 851, 857 (Iowa 1994) ("[A] juvenile court order is not final unless it disposes of all the issues."). *But see In re K.D.*, 975 N.W.2d 310, 324–26 (Iowa 2022) (examining whether HHS's actions in removing children from a long-term placement was reasonable and in the children's best interests). And when the State dismissed its CINA petition and D.P. filed notice of appeal, she did not challenge the removal in her brief. The removal order is not before us in this appeal.

Therefore, we believe Iowa has exclusive, continuing jurisdiction under Iowa Code section 598B.202(1)(a).

Concerning section 598B.202(1)(b), the juvenile court stated,

[T]his court finds that the child and person acting as parent, [D.P.] live in Iowa. However, [D.P.] does not currently have custody of this child because of temporary removal, and the other family members that do, have put in their 10 day notice. Texas reports [K.L.] will be placed with both siblings if returned to Texas.

Again, we acknowledge the juvenile court may have temporarily taken custody of K.L. away from D.P. through the removal. But we find this did not change D.P.'s status as K.L.'s managing custodian or guardian. She remained the person acting as a parent in Iowa. At the time of the jurisdictional hearing, it was undisputed that the child and a person acting as a parent did not reside in Texas. Therefore, we conclude Iowa also has the exclusive, continuing jurisdiction under section 598B.202(b). Further, Iowa has jurisdiction to modify Texas's child custody determination under Iowa Code section 598B.203(2) for the same reason.

Nevertheless, the juvenile court stated,

This Iowa Court declines to assert jurisdiction over this child and defers to Texas's assertion of continued jurisdiction. [K.L.] has sibling connections in Texas and the Texas court has a great deal of information about the child and extended family. [D.P.] has rejected M.C. and the new sibling is not under Iowa jurisdiction. Additionally, substantial evidence exists in both states.

This raises an issue of whether the Iowa court correctly declined to exercise its jurisdiction as an inconvenient forum under Iowa Code section 598B.207. Section 598B.207 provides:

1. A court of this state which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more

appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

2. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including all of the following:

a. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

b. The length of time the child has resided outside this state.

c. The distance between the court in this state and the court in the state that would assume jurisdiction.

d. The relative financial circumstances of the parties.

e. Any agreement of the parties as to which state should assume jurisdiction.

f. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

g. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

h. The familiarity of the court of each state with the facts and issues in the pending litigation.

3. If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

4. A court of this state may decline to exercise its jurisdiction under this chapter if a child-custody determination is incidental to an action for dissolution of marriage or another proceeding while still retaining jurisdiction over the dissolution of marriage or other proceeding.

We note the State asked for a limited remand for the juvenile court to determine its ability to decline jurisdiction under section 598B.207 or whether Iowa must assert jurisdiction under section 598B.202(1)(b). The supreme court denied the State's motion, and we believe the record is sufficient for our de novo review of this question.

Some of the section 598B.207(2) factors favor asserting jurisdiction in Iowa. The Texas court placed K.L. with D.P. in March of 2021, when she was about six

months old. She has resided in Iowa most of her life. *See* Iowa Code § 598B.207(2)(b). The distance between Iowa and Texas is considerable and, given D.P.'s financial circumstances, it would be difficult for D.P. to litigate custody in Texas. *See id.* § 598B.207(2)(c)–(d). Substantial evidence exists in Iowa concerning D.P.'s home, K.L.'s friends and extended family, her medical care, and childcare. *See id.* § 598B.207(2)(f).

Other factors support Texas as a more appropriate forum. Texas has a long history with this family and substantial evidence exists in Texas concerning K.L's extended Texas family and M.C.'s placement. *See id.* Given Texas's history with this family and the placement of M.C. in Texas, the Texas court can decide the issue expeditiously and has the procedures necessary for the presentation of all the evidence—including Iowa witnesses. *See id.* § 598B.207(2)(g). And while the courts of each state are familiar with certain facts and issues, Texas's history with this family and the presence of M.C. and the younger sibling in the same placement favors Texas. *See id.* § 598B.207(2)(h).

D.P. initiated contact with HHS due to her problems taking care of both K.L. and M.C. and her mental health concerns. This resulted in the Texas court's return of M.C. to Texas and the removal of K.L. from D.P.'s care in Iowa. K.L. now has another sibling in placement with M.C. in Texas. The Texas court plans to place K.L. with her siblings. Iowa law favors maintaining a sibling connection. *See id.* § 232.108; *In re T.J.M.,* No. 18-1390, 2018 WL 5840806, at *4–5 (Iowa Ct. App. Nov. 7, 2018); *In re J.B.*, No.18-1177, 2018 WL 4362753, at *2–3 (Iowa Ct. App. Sept. 12, 2018). The CINA proceeding in Iowa creates uncertainty concerning the future of K.L.'s placement with D.P. While K.L. has other relatives in Iowa, the

family HHS placed her with following the removal has relinquished care and other relatives have not stepped up. Keeping K.L. in Iowa pending resolution of the CINA action would separate her from her siblings. So, on balance, we agree with the juvenile court that the sibling connection supports declining jurisdiction in Iowa so that K.L. can be placed with her siblings in Texas under the supervision of the Texas court.

Iowa courts generally "reflect an undeniable bias favoring continuing jurisdiction" in the original state, believing it minimizes forum shopping and increases stability. *In re Marriage of Hocker*, 752 N.W.2d 447, 449 (Iowa Ct. App. 2008). Here, Texas courts chose to assert retained jurisdiction. And though the child and conservator were residents of Iowa, a Texas conservatorship granted D.P. custody of the child and the Texas conservatorship order asserted continuing jurisdiction. K.L.'s siblings are under the continuing jurisdiction of Texas. Therefore, we conclude the juvenile court properly declined jurisdiction as an inconvenient forum under section 598B.207.

**AFFIRMED.**