**IN THE COURT OF APPEALS OF IOWA**

No. 18-0151
Filed March 21, 2018

**IN THE INTEREST OF W.D.,**
**Minor Child,**

**C.W., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

        A father appeals the termination of his parental rights.  **AFFIRMED.**

        Gregory A. Johnston, Muscatine, for appellant father.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

        Christopher J. Foster of Foster Law Office, Iowa City, guardian ad litem for minor child.

        Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

A father appeals the termination of his parental rights to his child.[1] He claims the State failed to prove the statutory grounds for termination, that he should be granted additional time to work toward reunification, and that termination is not in the child's best interests. We affirm the juvenile court's order.

We review termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). In doing so, we are not bound by the juvenile court's findings of fact, although we give them weight, especially those concerning witness credibility. *See id.* The three-step statutory framework governing the termination of parental rights is well established and need not be repeated here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010).

The father challenges the sufficiency of the evidence supporting the grounds for terminating his parental rights. Before terminating parental rights, the juvenile court must find clear and convincing evidence supporting one of the grounds for termination listed under Iowa Code section 232.116(1) (2017). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The juvenile court terminated the father's parental rights pursuant to section 232.116(1)(h). To terminate the father's parental rights pursuant to section 232.116(1)(h), the State must prove: (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance (CINA); (3) the child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months; and (4) there is clear and convincing evidence that at

---

[1] The mother consented to the termination of her parental rights to the child.

the present time, the child cannot be returned to the custody of the child's parents as provided in section 232.102. The father concedes the first two elements, so his claim on appeal implicates the third and fourth elements.

Section 232.116(1)(h)(3) requires that the child has been removed from the physical custody of the parents for at least six of the last twelve months, or for the last six consecutive months. First, it does not appear the father raised this issue before the juvenile court. This raises a serious error preservation issue. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) ("As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal."). Second, the father articulates no argument with regard to this element. His failure to make any argument concerning this element waives a challenge to termination on this issue. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013) (noting a party's failure to present any substantive analysis or argument on an issue waives the issue); *see also Hyler v. Garner,* 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for reversal on appeal"). Nevertheless, even if error was preserved, we find the father's implicit claim without merit.

The child was removed from the mother's custody in May 2016 and placed in the custody of the Iowa Department of Human Services (DHS) for placement in family foster care. The child has never been in the father's custody. After paternity testing, an amended petition identifying C.W. as the father was filed in July 2016. The termination hearing was held over a year later, in September 2017.

As to the requisite removal time period, the clock started running when the child was removed from the mother. As we previously stated, "removal of the child

from the mother is sufficient to support termination of the father's parental rights." *In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *3 (Iowa Ct. App. Mar. 22, 2017). We cited the supreme court's construction of "the word 'parents' to mean plural or singular." *Id.* at *4 (citing *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992)). We concluded, "Because the child had been removed from the mother's care for the requisite period of time, . . . it was not necessary for the State to prove the child was removed from the father's care." *Id.* We reached the same conclusion in *In re C.H.*, No. 16-2179, 2017 WL 1278368, at *3 (Iowa Ct. App. Apr. 5, 2017). Again, we construed the language "removed from the physical custody of the child's parents" "to include both singular and plural," and we stated the term "parents" "includes removal from either parent." *C.H.*, 2017 WL 1278368, at *3. We are persuaded by the reasoning of *Z.G.* and *C.H.* The child's formal removal from his mother was sufficient to start the statutory timelines counting toward termination as to both parents. *See In re K.H.*, No. 17-0384, 2017 WL 2189769, at *2 (Iowa Ct. App. May 17, 2017). Clear and convincing evidence shows the grounds for terminating the father's parental rights pursuant to section 232.116(1)(h)(3) have been met.

The father challenges the sufficiency of the evidence supporting the fourth element of paragraph (h)—that his child could not be returned to his custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."). To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a [CINA]." *Id.*

§ 232.102(5)(2); *accord In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The threat of probable harm will justify termination of parental rights, and the perceived harm need not be the one that supported the child's initial removal from the home. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "At the present time" refers to the time of the termination hearing. *A.M.*, 843 N.W.2d at 111.

The father makes no real argument on this point, and merely states generally that "[t]he juvenile court did not make sufficient findings that W.D. could not safely be placed in his father's care." Setting aside any error-preservation issue, the father's argument that the State failed to prove the child could not be returned to his custody at the time of the termination hearing is fatally flawed. On appeal, he asks that he be granted an additional period of time "to obtain stability for return of the child." This request for more time is certainly a tacit, if not explicit, admission that the child could not be returned to his care at the time of the termination hearing. Asked at the hearing if he believed the child could come home to him "today," the father answered, "No. I mean, yes and no." Asked to elucidate, the father responded, "Because of all the stuff that's going on and, you know, and then I guess—I wish he was, yes. I wish he was coming home, but . . . ." Asked if he was requesting the court to return the child to him at the time of the hearing or asking for additional time, the father responded, "Additional time but, like I said, I want to do it today, but I know if—I need additional time to prove to [the social worker assigned to the case] that, you know—until she gets my psych or my evaluation from my counselor." On cross-examination, the father was asked, "[B]ut what you are asking for, what you are hoping the Court would do today is give you some additional time to work through things, right?" The father answered, "Yes."

Given the circumstances, we believe this is sufficient evidence for the establishment of element four of section 232.116(1)(h). *See Z.G.*, 2017 WL 1086227, at *4 n.5 (collecting cases in which termination of parental rights was affirmed because a parent admitted the child or children could not be returned to the parent's care at the time of the termination hearing).

In any event, the juvenile court found:

> If the child were returned to the custody of his father, the child would be subject to failure to provide appropriate supervision. [The father] has been aware that his wife, [A.W.], presents a danger to the child from the beginning of this involvement with [DHS]. [The father] was specifically notified of this fact by the court when the court filed the dispositional order on November 17, 2016. In that order, the court specifically stated placement of the child with [the father and his wife] is not appropriate.

The social worker opined that termination of the father's parental rights was appropriate because "the greatest threat of maltreatment really to [the child] is [the father]'s relationship, his marriage—his relationship with [his wife] combined with his mental illness." After a thorough analysis of the facts, the juvenile court concluded: "The child cannot be returned to [the father's] custody now or in the near future. [The father] has not completely addressed his mental health issues. In addition, he would fail to provide appropriate supervision to his child by allowing his wife to provide unsupervised supervision to the child." On our de novo review of the record, we agree with this conclusion.[2] Clear and convincing evidence

---

[2] On appeal, the father asserts he is no longer living with his wife. This assertion is outside the closed record. Therefore, we cannot consider it on appeal. *See* Iowa R. App. P. 6.801; *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."); *State v. Weiland,* 202 N.W.2d 67, 69 (Iowa 1972) (noting appellate courts cannot consider facts that are outside of the record).

shows the grounds for terminating the father's parental rights pursuant to section 232.116(1)(h)(4) have been met.

The father seeks an additional six months "to obtain stability for return of the child." If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." The record indicates the father was given additional time during the course of proceedings to address his mental-health issues. He squandered that opportunity. At the termination hearing, the father gave nothing of real substance that would support a finding that the need for removal would not exist in six months. In any event, the juvenile court did not address his request for additional time. Sidestepping the error-preservation issue, and on our de novo review of the record, we are unable to make a finding that the need for removal would no longer exist after the father's requested extension.

Furthermore, "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. Children require permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). Delaying permanency any

further is not in the child's best interests. As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)); *In re Kester*, 228 N.W.2d 107, 110-11 (Iowa 1975) (refusing to "gamble with the children's future" or force the children to "await their [parent]'s maturity" where the parent's history shows "good intentions, but feeble resistance to temptation and wrongdoing"). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. The father has been given more than ample time to address his adult

issues and demonstrate that he could provide a safe and stable home for the child, and he was not able to do so. Any additional time in limbo would not be in the child's best interests.

Finally, the father contends that termination is not in the child's best interests. In making the best-interests determination, the primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 37 (quoting Iowa Code § 232.116(2)). The need for a permanent home is of primary importance. *See J.E.*, 723 N.W.2d at 802 (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home").

The record clearly establishes that termination of the father's parental rights is in the child's best interests. The child has never lived with the father. The care coordinator testified the child has "flourished" since being placed with his maternal aunt and uncle and to remove the child from that home would "set him back." After our de novo review of the record, and after "[g]iving primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," we conclude termination is in the best interests of the child. Iowa Code § 232.116(2). Termination of the father's parental rights will provide the child with the safety and stability he needs.

Because the father does not assert that any of the exceptions in section 232.116(3) apply to preclude termination of his parental rights, we need not

discuss that step of the three-step analysis. *See P.L*, 778 N.W.2d at 40; *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017).

Accordingly, we affirm the termination of the father's parental rights to his child.

**AFFIRMED.**