# IN THE COURT OF APPEALS OF IOWA

No. 20-1367
Filed January 21, 2021


**IN THE INTEREST OF L.S., J.S., and A.S.,**
**Minor Children,**

**K.L., Mother of L.S.,**
 Appellant,

**J.S., Father,**
 Appellant.

_____


Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.

A father and mother separately appeal the termination of their parental rights. **AFFFIRMED ON BOTH APPEALS.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant mother of L.S.

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Meret Thali of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VOGEL, Senior Judge.**

The father of A.S., born 2010; J.S., born 2015; and L.S., born 2017, appeals the termination of his parental rights. The mother of L.S. separately appeals the termination of her parental rights. Due to each parent's unresolved addictions and other problems, weighed against the children's need for permanency, we affirm.

The family came to the attention of the Iowa Department of Human Services on April 24, 2019, on reports that the parents were using methamphetamine while caring for the children. A drug pipe was subsequently found in their residence. Both parents admitted to using methamphetamine, and both parents tested positive for methamphetamine and amphetamines, with the father also testing positive for marijuana. With a safety plan in place, the children were allowed to remain in the home. However, the condition of the home "declined significantly," and the parents' initial compliance with drug testing and offered services ceased. The children were removed on May 30.

Because the father is a member of the Soboba Band of Luiseño Indians, the juvenile court found on September 13, 2019, that both the federal and state Indian Child Welfare acts (ICWA) were applicable.[1] On December 14, law enforcement executed a search warrant on the home where both parents were residing and found drugs and multiple items of drug paraphernalia. After more than fifteen months of offered services and little progress by either parent to resume the care of the children safely, the State petitioned for termination of both

---

[1] The parties and juvenile court referenced the Iowa ICWA in the juvenile proceedings, filings, and orders. Upon further inquiry, the Soboba Band of Luiseño Indians was identified. The tribe intervened and participated in all hearings.

parents' parental rights. The juvenile court granted the petition, and the parents separately appeal.

We review termination proceedings de novo. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**The Mother's Appeal.**

The mother's rights were terminated under Iowa Code section 232.116(1)(h) and (*l*) (2020). Her only disagreement under both Code paragraphs is whether there was clear and convincing evidence that L.S. could not be returned to her care.[2] Paragraph (h) allows termination if the child cannot be returned to the parent's care "at the present time." Iowa Code § 232.116(1)(h). Paragraph (*l*) allows termination if the child cannot be returned "within a reasonable period of time." *Id.* § 232.116(1)(*l*). Because paragraph (*l*) may imply a longer time frame, we will focus on it.[3] *See In re L.H.*, 949 N.W.2d 268, 271–72 (Iowa Ct. App. 2020)

---

[2] While the mother did briefly state that termination "is not in the child's best interest," she did not give any facts or reasoning that would allow us to address the assertion. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013) (noting a party's failure to present any substantive analysis or argument on an issue waives the issue).

[3] Under section 232.116(1)(*l*), the juvenile court may terminate parental rights if it finds all of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
>
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

(considering termination under paragraph (*l*) and noting "we must consider the [drug] treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future" (quoting *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998))); *see also In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

After a May 1, 2019 substance-abuse evaluation, the mother began treatment on May 6, but she was discharged the same day for failing to return to treatment. An investigation into the home resulted in a founded report of denial of critical care and failure to provide proper supervision, naming both parents as responsible. Another founded report of dangerous substances named the mother as the person responsible. A May 30 hair-stat drug test on L.S. was positive for methamphetamine. On June 19, the mother again tested positive for methamphetamine and amphetamines. She was diagnosed with severe methamphetamine use disorder and severe cannabis use disorder. She soon began inpatient treatment. On July 26, after the mother demonstrated progress, L.S. was placed with the mother at the treatment center. In early September, the mother transitioned to intensive outpatient treatment and moved into the maternal grandmother's home, with L.S. still in her care.

---

The mother focuses on the third element, that the child cannot be returned to her custody "within a reasonable period of time." Iowa Code § 232.116(1)(*l*)(3). Because she does not challenge the juvenile court's findings as to the first two elements, including whether she has a "severe substance-related disorder," we do not consider those elements on appeal.

On September 13, the mother did not resist adjudication of L.S. as a child in need of assistance (CINA). The order formally provided L.S. to be returned to the care of the mother. But on October 3, the State moved to have L.S. transferred to the Iowa Department of Human Services (DHS), noting the mother posted videos on Facebook that showed "a significant lack of empathy, nurturing and maturity." The mother also allowed the father to care for L.S., even though the father admitted he continued to actively use methamphetamine. On November 13, the service provider noted the mother "has not been consistently participating in substance abuse treatment." Text messages between DHS and the mother show the mother resisted random drug testing and expressed indifference about missing group and individual therapy sessions. The mother failed to appear at the November 19 dispositional hearing, and her attorney reported he had been unable to reach her since the prior month's court hearing. After the November hearing, the court ordered custody of L.S. to be transferred to DHS for out-of-home placement. On November 20, the mother was discharged from treatment for noncompliance. The service provider noted the mother "reported relapsing on meth about a week prior to" December 10.

The January 13, 2020 progress report stated the mother "has not been consistent in tending to her mental health needs." During her February 10 substance-abuse evaluation, the mother admitted she was using methamphetamine daily and marijuana a few times per month. On March 4, she was admitted to another treatment center. She completed this treatment program without issue, and on April 30 she transitioned to outpatient treatment and moved into the maternal grandmother's home. However, she entered intensive outpatient

treatment at another facility on May 4. Prior to the termination hearing, the DHS worker summarized the mother's journey in addressing her issues with substance abuse, mental health, employment, and housing. While progress had been made in the mother's most recent substance-abuse and mental-health issues, the worker opined that the mother still did not have the ability to parent L.S. safely. The court agreed, finding the mother was now consistently attending therapy, but "her participation was limited. She had made no progress on her assignments, which included meeting attendance and managing anxiety. . . . [She] appeared to be unmotivated, yet she stated she was. [She] lacked insight to her disease and was at high risk of relapse."

On appeal, the mother focuses on her recent progress in substance-abuse treatment. Indeed, the most recent progress report from the treatment provider, dated July 20, 2020, noted that since the end of May she "has attended 14 of 16 group sessions and 4 of 5 scheduled individual sessions. She has actively participated in all sessions and has appeared engaged in her treatment program." While we commend the mother on her recent progress, it cannot erase her history of being in and out of treatment several times during the fifteen months of DHS-offered services. When the mother showed progress in the past and L.S. was returned to her care, such progress was short-lived and L.S. was soon again removed. Furthermore, the juvenile court found, and we agree, there was no evidence the mother was participating in mental-health services or had been able to stabilize her life outside of a structured treatment setting. On our de novo review, we agree clear and convincing evidence establishes that L.S. cannot returned to the mother's custody within a reasonable period of time considering

the child's age and need for a permanent home. *See* Iowa Code § 232.116(1)(*l*)(3). We affirm the termination of the mother's parental rights to L.S.

**The Father's Appeal.**

The father's parental rights were terminated under Iowa Code section 232.116(1)(e), (f), (h) and (*l*). Under paragraphs (f), (h) and (*l*), the father only contests his ability to have the children returned to his care either "at the present time" under paragraphs (f) and (h) or "within a reasonable period of time" under paragraph (*l*). As with the mother's appeal, we will focus our discussion on paragraph (*l*).

Like the mother, the father's substance-abuse issues have been a concern throughout these proceedings. The father has admitted to suffering from a substance-abuse addiction as well as a gambling addiction. He completed an inpatient substance-abuse treatment program in Florida in March 2020. Although he signed up for outpatient treatment upon his return to Iowa, he admitted he had not been attending. In a report dated June 24, a service provider noted the father failed to attend any one-on-one sessions or outpatient substance-abuse treatment during the reporting period. Because the father has not shown any sustained progress in addressing his addictions, we find clear and convincing evidence the children cannot be returned to his care within a reasonable time. *See id.* Therefore, the statutory grounds for termination are satisfied.

The father's appeal takes on an additional argument not asserted in the mother's appeal—the overlay of the protection of the Iowa ICWA. *See* Iowa Code ch. 232B. He asserts the juvenile court erred in finding the State made "active efforts" to avoid termination under Iowa Code section 232B.5(19). Under the Iowa

ICWA, the juvenile court may not terminate parental rights over an Indian child "unless the evidence of active efforts shows there has been a vigorous and concerted level of casework beyond the level that typically constitutes reasonable efforts as defined in sections 232.57 and 232.102." Iowa Code § 232B.5(19). "Active efforts shall utilize the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregivers." *Id.* "While the ICWA focuses on preserving Indian culture, it does not do so at the expense of a child's right to security and stability." *In re C.A.V.*, 787 N.W.2d 96, 104 (Iowa Ct. App. 2010).

Even before the children were found to be CINA, the adjudicatory court found active efforts had been made to avoid the need for continued out-of-home placement, but those efforts were unsuccessful. The father did not challenge the efforts made prior to filing this appeal, and therefore, his belated assertion is not preserved. We have previously determined "nothing in ICWA expressly or impliedly preempts a state's error preservation rules." *In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998)

Even if the father had preserved error, we agree with the juvenile court's finding that active efforts were made. DHS recognized the tribal ties prior to the CINA adjudication, and the tribe has been involved throughout this proceeding. The many services offered to the father included mental-health and substance-abuse counselors, support group meetings, healthy family and friend supports, a Boys Town consultant, and DHS workers. The father admitted to not engaging with ongoing substance-abuse and mental-health services, and he struggled with confirming his attendance for supervised visits with the children or even

remembering the times to attend visitation. The DHS report filed July 21 noted, "There is not evidence that [the father] has participated in any activities to support his sobriety since his return from inpatient treatment," which was four months earlier. The juvenile court found the father has had "a slew of in-home workers in this case." On our de novo review, we agree with the juvenile court that active efforts had been made "to provide remedial services and rehabilitative programs designed to prevent the breakup of this Native American family" and that "all tribally appropriate family preservation alternatives have been exhausted."

Finally the father argues that it is not in the children's best interests that his rights be terminated, asserting a guardianship would be a better resolution. To support his position, he cites to the position taken by the tribe asserted in the lower court proceedings that preserving his parental rights would allow the children to access tribal resources.[4] As to the children's best interests in general, we agree with the juvenile court for the reasons expressed above that "continued custody of these children by the parent or Indian custodian is likely to result in serious emotional or physical damage to these children." As to a guardianship, the juvenile court found,

> There is no evidence [the father] has maintained contact with the Tribe outside of these proceedings or taught his children the customs and culture of the Tribe. [He] has had [nine-and-one-half, five, and two-and-one-half] years to establish paternity and enroll his children in the Tribe so they could begin receiving those benefits. He has failed to do so. It does not appear [the father] is as concerned about his children's contact with the Tribe as the Tribe is. The children's enrollment is dependent upon [the father] being the biological father of each of these children. The [qualified expert witness] attempted to contact [the father], to no avail. This court is not convinced [the

---

[4] As an intervenor, the tribe did not appeal.

father] will follow through now, when he has failed to follow through for the past 10 years.

In making these findings, the juvenile court relied on a host of reports filed without objection throughout these proceedings. These reports detailed the State's efforts to assist the father in enrolling the children in the tribe. The father provided no evidence of his interest in pursuing his contact with the tribe. The children are all placed with extended family members, and they are reported to be doing well. Although guardianship is an alternative that may be appropriate in some situations, this is not one. "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). These children need permanency. *See id.* at 478 ("The child . . . deserves a normal life with an adoptive family. The child's grandparents or other relatives may seek to adopt the child."). We agree with the juvenile court termination is in the best interests of these children.

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**