# IN THE COURT OF APPEALS OF IOWA

No. 22-0535
Filed June 15, 2022

**IN THE INTEREST OF E.M.,**
**Minor Child,**

**S.M., Mother,**
        Appellant**,**

**A.G.-C., Father,**
        Appellant**.**
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

The mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Rebecca G. Ruggero, Davenport, for appellant mother.

Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant father.

Thomas J. Miller, Attorney General, Ellen Ramsey-Kacena, Assistant Attorney General for appellee State.

Christine D. Frederick of Zamora, Taylor, Woods, & Frederick, Davenport, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

The mother and father of E.M., born in 2016, separately appeal the termination of their parental rights. The juvenile court terminated the mother's and father's parental rights under Iowa Code section 232.116(1)(b), (d), (e), and (f) (2021). Additionally, the court also terminated the mother's parental rights under section 232.116(1)(*l*). The mother argues she was denied due process, the State failed to make reasonable efforts to reunify her with E.M., and termination is not in the child's best interests. The father limits his appeal to an argument that the juvenile court should have applied a permissive exception to save his parent-child relationship with E.M., claiming his bond with the child is so strong that termination of his rights will be to the child's detriment. *See* Iowa Code § 232.116(3)(c).

**I. Background Facts.**

This family came to the attention of the Iowa Department of Human Services (DHS) in October 2019 when the father assaulted the mother in the child's presence. It was alleged both parents were using methamphetamine at the time. The father was arrested for domestic abuse causing bodily injury.

In December, DHS received additional allegations the mother was using methamphetamine while caring for the children and also taking heroin intravenously. The same month, DHS learned the mother left her three children—then thirteen, seven, and three years old—home alone for multiple days while she left the state of Iowa.[1] The property manager found the children in the home

---

[1] The mother has two other children with a different biological father. Child-in-need-of-assistance (CINA) cases were also opened for them, and they were removed from the mother's care. The siblings' CINA cases closed with a bridge

without a working phone or an adult present. As a result, the mother was charged with two counts of child endangerment.

In January 2020, the mother submitted to drug testing and tested positive for methamphetamine. E.M. was moved to the home of a family friend as part of a safety plan, and the older two children moved in with their father.

E.M. was formally removed from the parents' care and adjudicated CINA in March 2020. Following E.M.'s removal, the father was in and out of incarceration, including a period when he went on the run. He was caught and imprisoned from January 2021 through the second and final day of the termination trial on February 17, 2022. Because of the father's conviction for child endangerment causing bodily injury, the prison refused DHS's request for E.M. to have visits with the father. As an alternative to traditional visits, DHS encouraged the father to send letters to E.M. to maintain contact, but the father never sent any.

Between November 2020 and October 2021, the mother was largely disengaged and missing. During the nearly year-long period, her only visits with E.M. were on February 27, March 17, and May 21, 2021, and the mother ended the May visit after twenty minutes. The mother did not participate in other services, failed to stay in contact with DHS, and did not attend court hearings.[2] During this same stretch of time, she was charged with several crimes. Even after the mother re-engaged in October 2021—after the termination petition was filed—she

_____

order when they were placed in the care of their father. The mother's rights to the two older children are not at issue in this appeal.

[2] The mother missed a review hearing in November 2020, a permanency hearing in March 2021, and a permanency review hearing in September 2021. She was represented by an attorney who was present at each of the hearings.

continued to use methamphetamine.[3] She also missed some of her once-weekly visits with E.M. and generally refused to participate in services led by the family support specialist (FSS). At the final day of trial, she testified she would be entering inpatient treatment for substance abuse the next day. And the mother was awaiting sentencing for crimes to which she already pled guilty: possession of a controlled substance and failure to affix a drug tax stamp. She testified she "took a plea agreement of two to five years of probation supervised"; it is not clear if the criminal court was bound by this agreement or if the mother faced potential incarceration.

Neither parent claimed E.M. could be returned to their custody as of the termination trial. The mother thought she needed thirty days, three months, or six months to be ready. The father claimed he would be released from prison in late March or early April 2022 and suggested he could immediately begin caring for E.M., but there was no evidence about where he would live, what requirements he may have to follow post-release, or any services he completed during prison to address his substance abuse and perpetration of domestic violence.

The juvenile court terminated both the mother's and the father's parental rights; each appeals.

---

[3] The following was the mother's testimony on February 17, 2022 about her sobriety:

> Q. Okay. When is your sober date? A. Like a month ago. A couple months ago.
> Q. If you indicated to CADS that it was a week ago, would that be correct? A. What are you talking about?
> Q. Your sober date is a week ago, correct? That's what CADS was told? A. A week ago?
> Q. Correct. You used a week ago? A. It has been a little longer than a week.

**II. Standard of Review.**

Our review of termination proceedings is de novo. *In re D.G.*, 704 N.W.2d 454, 457 (Iowa Ct. App. 2005). "[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally," so we consider each parent's appeal individually. *Id.*

**III. Discussion.**

**A. Mother's Appeal.**

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(b), (d), (e), (f), and (*l*). The mother does not contest any of the statutory grounds directly. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa 2013) ("Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived."). She challenges whether reasonable efforts were made to reunify her with E.M., which impacts the State's burden of proof for some grounds of termination—but not all. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he scope of the efforts by DHS to reunify the parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts. The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." (internal citations omitted)).

Section 232.116(1)(b), which the court may rely on to terminate parental rights when "there is clear and convincing evidence that the child has been abandoned or deserted," does not contain a reasonable-efforts requirement. *See In re M.D.*, No. 19-1912, 2020 WL 567320, at *1 (Iowa Ct. App. Feb. 5, 2020) (collecting cases in support of statement). As the mother does not challenge the

court's finding of abandonment or desertion, and her reasonable-efforts challenge—even if preserved[4]—would not impact this ground, she has waived any challenge to termination under paragraph (b). We affirm under this ground.[5]

Much like her reasonable-efforts challenge, the mother argues she was denied substantive due process because DHS "made little or no effort to locate [her] during the pendency of the CINA matter until it decided to file" the termination petition. She argues DHS had an obligation to work harder trying to persuade her to engage with services and visits.[6] But the mother never raised this issue to the

---

[4] Because "we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm," *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999), we do not consider whether the mother preserved a challenge as to the State's efforts or how those efforts may impact the other statutory grounds.

[5] As defined in section 232.2(14), desertion

> means the relinquishment or surrender of a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of desertion need not include the intention to desert, but it is evidenced by the lack of attempted contact with the child or by only incidental contact with the child.

"Abandonment of a child" is

> the relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

Iowa Code § 232.2(1).

Between March 18 and October 2021—a period of more than six months—the mother visited with E.M. only one time, and that visit lasted only twenty minutes before the mother ended it prematurely. The mother was not otherwise financially or emotionally supporting E.M. during this time.

[6] In her petition on appeal, the mother asserts she "was denied due process during the time DHS failed to meaningfully reach out to her and give her notice (BEFORE the termination petition was filed) that losing her [child], forever, was right around the corner." The mother may not have internalized that termination of her rights was possible before the county attorney filed the petition to terminate, but as early as March 2020, a court order informed the parents:

> You are advised that your children are in an out-of-home placement.
> The time allowed by law to resolve the issues of abuse and neglect

juvenile court and, accordingly, never got a ruling on it. It is not preserved for our review, so we do not consider it. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."); *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

Finally, the mother argues termination of her parental rights is not in E.M.'s best interests. *See* Iowa Code § 232.116(2). "A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). By the second, final day of the termination trial in February 2022, E.M. had been out of the mother's care for nearly two years. During that time, the mother did not make any progress in addressing her addiction to methamphetamine and, despite the mother's claims to the contrary, no evidence suggests E.M. will be safe in the mother's care in the near future. In contrast, E.M. is happy in the home of the foster parent, where E.M. has lived since June 2020. The social worker testified, "[E.M.] absolutely loves [and is] thriving in [the] current

---

so that your children can be safely returned to you is limited. If your children are under age four, this may be as short as six months. What you do, what you say, and how you act from now on will be considered in determining whether or not your children remain at risk of harm. *Failure to participate in services, failure to change your parenting, failure to recognize the need to change your parenting, your lifestyle, or choices you make which affect the health, safety, or welfare of your children may result in termination of your parental rights.*

(Emphasis added.)

environment." E.M. was described as "happy" and "content," and the foster mother meets E.M.'s needs. Additionally, E.M. calls the foster parent "mommy," and the foster parent intends to adopt E.M. *See* Iowa Code § 232.116(2)(b)(1). Terminating the mother's parental rights will allow for E.M. to be adopted and achieve permanency, which is in E.M.'s best interests. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

We affirm the termination of the mother's parental rights to E.M.

**B. Father's Appeal.**

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (d), (e), and (f). On appeal, the father's only argument is that the juvenile court should have applied a permissive exception to save his parent-child relationship with E.M., claiming his bond with the child is so strong that termination of his rights will be to the child's detriment. *See* Iowa Code § 232.116(3)(c) (allowing the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). He has the burden to establish the exception should be applied to save the parent-child relationship. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

The father did not put forth any evidence at the termination trial to support the application of this exception—either to show the strength of his and E.M.'s relationship or to demonstrate the detriment E.M. would experience. The evidence that was put forth established the father did not see E.M. for more than one year leading up to the trial and did not write letters to the child. When the FSS was asked whether "[E.M.] has a bond with dad," she responded, "I don't think so" and

pointed to how little E.M. mentions the father. And as we stated when addressing the mother's appeal, E.M. is integrated into the foster family and is thriving in that environment. Any detriment corresponding to the termination of the father's rights does not outweigh the benefit of permanency E.M. will be afforded. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."). The application of section 232.116(3)(c) is not warranted here.

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**