# IN THE COURT OF APPEALS OF IOWA

No. 22-0516
Filed October 5, 2022

**IN THE INTEREST OF E.C., L.C., and J.C.,**
**Minor Children,**

**F.H., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.


    A mother appeals the termination of her parental rights to three children. **AFFIRMED.**


    Patricia A. Rolfstad, Davenport, for appellant mother.

    Thomas J. Miller, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

    Victoria D. Noel of the Noel Law Firm, P.C., Clinton, attorney and guardian ad litem for minor children.


    Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

A mother pushing for a "second chance" appeals the termination of her parental rights to her three children—born in 2010, 2012, and 2015—under Iowa Code section 232.116(1)(d), (f), and (i) (2021). Considering the chances the mother has already been given, we affirm the termination of her parental rights upon our de novo review of the record.[1]

## I. Background Facts and Proceedings

In June 2020, the mother's oldest child witnessed a fight between her mother and stepfather that ended with her mother being knocked to the floor unconscious. Around the same time, the Iowa Department of Human Services[2] received a report that the mother was using methamphetamine and marijuana. During its investigation of this report, the department learned the stepfather had slapped the youngest child and given her a bloody nose.

Family-preservation services were offered, but the mother declined drug testing, continued using drugs, and kept associating with men who had been violent in the past. The mother also missed appointments for her mental health, did not register the children for school, was about to lose her housing, and left the children alone while she drove around smoking marijuana. As a result, the State

---

[1] In conducting this de novo review, we are not bound by the juvenile court's factual findings, although "we accord them weight, especially in assessing witness credibility." *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (citation omitted). Our primary concern is the best interests of the children. *Id.*

[2] We note the department has since merged with the Iowa Department of Public Health, thus culminating in the Iowa Department of Health and Human Services. *See In re D.B.*, No. 22-0979, 2022 WL 3906768, at *1 n.3 (Iowa Ct. App. Aug. 21, 2022).

filed child-in-need-of-assistance petitions in September. By the end of October, the mother had lost her apartment and moved several times.

In early November, the court adjudicated the children as in need of assistance. The court warned the mother, on the record and in its adjudication order, "that if anything happens in this case that does not comply with the safety plan or any of the testing that is required these children will be removed." Two days after the adjudication hearing, the mother violated the safety plan. The department's application to temporarily remove the children was granted, and removal was confirmed after a hearing. The children were first placed with suitable others but then moved to foster care in December because of safety concerns.

The mother was told that for the children to return to her care, she needed to "demonstrate her ability to meet" her children's needs, "demonstrate sober living, address her mental health and be able to identify healthy relationships." By the time of the disposition hearing in January 2021, the mother had not done any of those things. She had completed a substance-abuse evaluation but did not participate in the recommended treatment or drug testing—though she admitted to recent use of methamphetamine. The mother made mental-health appointments but failed to show up for them. She also failed to show up for her children, attending only one visit after they were placed in foster care in early December.

The mother's situation was no better by mid-March. At a review hearing that month, the mother admitted that she was still using marijuana and methamphetamine. She tried inpatient substance-abuse treatment but left after just two days because "she was using with others there." The department had no idea where the mother was living, and her interactions with the children continued

to be inconsistent. A report from the department noted the mother "is able to say what she needs to work on and know that she needs to make changes" for her children and herself, but "she is not taking the steps to do this."

A few bright spots emerged by July. The mother started taking medications for her mental-health diagnoses and attended a few therapy sessions. She also attended some outpatient substance-abuse sessions after a second attempt at inpatient treatment failed again. And her visits with the children became more consistent. Yet, while the mother professed to be clean and sober, she tested positive for methamphetamine in mid-June. The mother told a provider that she relapsed with her boyfriend, who she also said choked her during a fight. Later that month, the mother was arrested on several drug charges.

By October, the mother had stopped attending mental-health therapy. Her attendance at substance-abuse treatment was sporadic, she declined drug testing, and the department observed behavioral indicators of methamphetamine use. Those behavioral indicators were confirmed when the mother admitted to recent methamphetamine use at the November permanency hearing. Because of the mother's backslide, the department recommended termination proceedings. The court agreed with this recommendation and ordered the State to file termination petitions. The State did so in December. The mother was jailed from mid-December to early January 2022. Upon her release, she stated that she would re-start substance-abuse treatment and mental-health therapy, but she never did.

Following a termination hearing in February, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (f), and (i).

The mother appeals,[3] challenging each of the three steps in the termination analysis. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3).

**II.    Analysis**

The first step in our review of the juvenile court's order requires us to consider whether a statutory ground for termination is satisfied. *See L.B.*, 970 N.W.2d at 313. Although the mother's rights were terminated under three grounds, all of which she challenges on appeal, we can affirm "on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). That ground is paragraph (f).

The mother's argument on this ground is limited to her contention that the State failed to show the children could not be returned to her care "in a reasonable amount of time" or "in the near future." But the State only had to show the children could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents"); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

In her testimony at the termination hearing, the mother agreed she needed more time to establish sobriety and stability before the children could be returned to her.[4] "The mother's concession 'amounts to clear and convincing evidence that

---

[3] The father's rights were also terminated. He does not appeal.

[4] At the termination hearing, the mother requested an extension of time or the establishment of a guardianship instead of termination. She does not specifically renew her request for an extension on appeal, although she does mention a

the child[ren] could not be returned to her care at the time of the termination hearing.'" *In re Z.R.*, No. 21-1290, 2022 WL 1487119, at *3 (Iowa Ct. App. May 11, 2022) (citation omitted). The concession is also supported by the record. Since removal, the mother was without stable housing, did not meaningfully address her substance-abuse and mental-health issues, and was never able to progress beyond fully supervised contact with the children. Clear and convincing evidence supports termination under section 232.116(1)(f).

The mother combines the second and third steps of the analysis, arguing "[t]ermination is not in the children's best interests because these children are bonded to their [m]other." *See L.B.*, 970 N.W.2d at 313 (stating the second step in the analysis is whether termination is in the children's best interests and the third is "whether we should exercise any of the permissive exceptions for termination"); *accord* Iowa Code § 232.116(2), (3). We examine these issues separately, starting with the children's best interests. *See, e.g.*, *In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022) ("We choose to separately address the often-conflated best-interests and statutory-exception arguments.").

On that question, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The defining elements of a child's best

---

guardianship. But she provides no argument on the issue, so we consider it waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013) ("Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived.").

interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

After the children were removed from the mother and placed into foster care, they told their guardian ad litem it was "the first time in their lives they have felt such safety." While they were in their mother's care, the children were exposed to drug use and domestic violence, at times having to care for their mother instead of the other way around. Those conditions have not changed.

Though the mother professed her sobriety at the termination hearing, she did not show up for a drug test the week before the hearing. At the hearing, the court noted on the record that the mother "had multiple outbursts" and was unable to "control her actions and emotions," which the caseworker testified were signs that she was using. In its written termination ruling, the court added the mother "was hostile, emotional, and visibly angry throughout much of the hearing. The mother was swearing, and making comments while [the caseworker] was testifying. While she was testifying, the mother's speaking was erratic and her mood was elevated." Just a couple of weeks before the termination hearing, the mother wrote a letter for a man charged with domestic assault and child endangerment in which she called herself his girlfriend and advocated for his release. This was the most recent in a long line of relationships the mother had with violent men—an issue that she took no steps to address.

The mother's drug use and domestically violent relationships have caused the children trauma. Each of them suffers from mental-health issues that the mother did not address when they were in her care. They were also behind in school, largely because of the mother's multiple moves and housing instability.

After more than one year with their foster parents, whom they called mom and dad, the guardian ad litem observed the children were "more stable, more confident, and more secure." The oldest child told the guardian ad litem the foster parents were "the best thing to ever happen to her and her siblings."

In a letter to the court written a few days before the termination hearing, the mother advocated "for a second chance," highlighting all the things she planned to do so that her children could be "reunited with [her] soon." But she squandered the time that she had been given. While the mother now, on the eve of termination, wants to make the changes she was directed to make throughout the proceedings, waiting that long is too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "[W]e cannot deprive a child of permanency after the State has proved a ground for termination" by hoping the parent will rectify the situation sometime in the future. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). Given the mother's past performance and the children's need for stability and permanency, we conclude termination is in their best interests.

The mother's bond with the children does not change that conclusion. *See* Iowa Code § 232.116(3)(c). We agree with the assessment of the social worker assigned to the case:

> I believe that all three of the [children] have a strong bond with their mom, but they need to have stability, and they need to know that they are going to be safe and that they're not going to continue to go back and forth and that they know that they're going to be somewhere safe every single night of their life.
> . . . .
> . . . . The kids need to know that this is where they're going to be forever. One of the things that [the oldest two children] have told me is that they want to know every night where they're going to

go to bed and every night where they're going to come home to, and where they're going to eat, and so I think that they need to know that for their own mental stability.

While the children want to be with the mother, they know about her struggles with substance abuse and domestic violence and sadly understand they will not be safe in her care. The court's "consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [their] developing needs." *D.W.*, 791 N.W.2d at 703. We are not convinced that the children "will be so disadvantaged by termination that the relationship should be saved in spite of all of the considerations weighing in favor of termination." *In re M.D.*, No. 21-1690, 2022 WL 108540, at *2 (Iowa Ct. App. Jan. 12, 2022). We accordingly conclude this exception does not apply. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting application of a statutory exception to termination is "permissive, not mandatory" (citation omitted)).

We also conclude the exception in section 232.116(3)(b), authorizing the court to deny termination when "[t]he child is over ten years of age and objects to termination," does not apply. The mother is correct that "*at times*, [the oldest child] wanted to return home to her." (Emphasis added.) But the child understood that would not be in her best interests because of her mother's poor choices. We find termination is proper despite the oldest child's wavering hope for her mother. *See In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) ("The children's yearning for reunification does not tilt the balance away from termination.").

The juvenile court's ruling terminating the mother's parental rights to her three children is affirmed.

**AFFIRMED.**