# IN THE COURT OF APPEALS OF IOWA

No. 22-1768
Filed March 8, 2023

**IN THE INTEREST OF M.D.W.,**
**Minor Child,**

**M.W., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A father appeals the termination of his parental rights to one child. **AFFIRMED.**

Douglas Cook, Jewell, for appellant father.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Mary Margaret Lauver, Lake City, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

M.W. appeals the termination of his parental rights to one child, M.D.W. He contends that the statutory grounds are unsatisfied, termination does not serve the child's best interests, and a six-month extension should have been granted. Upon our de novo review, we affirm the termination of his parental rights.

## I. Background Facts and Proceedings.

M.D.W. was born in November 2021 with methamphetamine in his system. His mother also tested positive for the substance at the hospital. The father claimed to use marijuana socially but denied methamphetamine use. The parents voluntarily placed M.D.W. with his paternal grandmother, with whom he has remained for the duration of the case. The court adjudicated him a child in need of assistance in January.

Prior to the adjudication, the father refused to participate in a drug test and reported that he believes a hair test is against his religion. The Iowa Department of Health and Human Services offered assistance including parent partners, family treatment court, and early head start, and also directed the parents to engage in mental-health and substance-abuse treatment. On January 20, the father acknowledged he would have a positive drug test and did not want his hair cut, so he agreed to complete an evaluation and set up the recommended treatment. He did not specify for which substance or substances his test would be positive. The father shaved his head a few weeks later of his own accord without completing a

hair test. The parents did not accept the department's offer to refer them to parent partners or to family treatment court.

When M.D.W. was hospitalized in April, neither parent came to visit him or attend his appointments. The father reportedly stayed with the paternal grandmother for a couple of days at a time and helped with his son around the May timeframe. The father reported that mental-health counseling and a psychological evaluation were set up in May, but he never attended them. The father completed a substance-abuse evaluation in May but denied any substance usage. Therefore, no treatment was recommended. It was agreed that the father would meet with the provider anyway, but he never attended those sessions or completed the secondary evaluation requested by the department. No report or drug test were provided for the completed evaluation.

The father never allowed the department into the home where he was residing with his brother, so it was not approved for visits. The father left town without notifying anyone after his brother was shot in late May. The department was able to reach the father on June 16 via phone. He asked to meet at his mother's house the next day but did not do so, and then his phone was turned off. Up until this time, the father enjoyed free access to visits under the paternal grandmother's supervision since she is M.D.W.'s caretaker. His visits were on and off but generally averaged once per week or four times every month. The department determined that this access was no longer appropriate and that the father needed to make contact and show cooperation first. The department has not had an address for the father since then. He called the caseworker on August 4 but refused to provide an address and stated that he did not have a phone. He

indicated that he was going to work out of state and would be gone for a month or more. There was no further contact achieved with the father until he was arrested in late August after a physical altercation with M.D.W.'s mother and her paramour.

The county attorney filed a petition to terminate parental rights in August, and a hearing was held on the matter on October 12. The father was awaiting trial on his criminal charges and remained in jail at the time of the hearing. The mother failed to appear for the hearing, her parental rights were terminated, and she does not appeal. After the court entered an order terminating the father's rights, he filed a timely appeal.

## II.    Review.

Our review of termination proceedings is de novo. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *C.B.*, 611 N.W.2d at 492.

## III.    Discussion.

The principal concern in termination proceedings is the child's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination

have been established, (2) termination is in the child's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73.

*A. Grounds for Termination.*

Here, the juvenile court found the State proved by clear and convincing evidence that termination of the father's parental rights was appropriate under paragraphs (b) and (e) of Iowa Code section 232.116(1) (2022). We may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). However, the father's petition on appeal does not specifically contest either of the grounds. Therefore, we find the argument waived. *See L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa 2013) ("Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived."). Even so, termination would be appropriate because the child has been removed for at least six consecutive months and the father has not affirmatively assumed the duties encompassed by the role of being a parent. *See* Iowa Code § 232.116(1)(e). Therefore, we find that termination of his parental rights is statutorily authorized.

*B. Best Interests.*

To evaluate the child's best interests, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). The "defining elements" of the best-interests analysis are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The father has not demonstrated he can provide a safe and permanent home for M.D.W. He has not had a home approved for visits to which he can take the child. He has no driver's license or working vehicle. The father testified that he was not consistent with visitation because he did not have a car, a place to go, or a steady job. The in-home worker provided transportation to visits on multiple occasions. The caseworker testified that the father's last known contact with his child was May 13. His potential to be a successful parent in the future does not negate the fact that he has been largely absent from the child's life for a significant period of time. "Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

M.D.W. deserves the permanency and security offered by his familial placement. *See A.S.*, 906 N.W.2d at 474 ("[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). Accordingly, we conclude termination of his father's parental rights is in M.D.W.'s best interest.

*C. Extension of Time.*

The father argues that a six-month extension would have provided him sufficient time to resume custody. Iowa Code section 232.104(2)(b) authorizes extending a child's placement for an additional six months if the court identifies "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." The father maintains that he was supporting the mother's efforts to reunify with their child because he

was having housing issues, but he realized around the six-month mark that she would not be successful and so it was up to him to gain primary custody. Unfortunately, he was arrested around that time and remained in jail.

The father acknowledges that he made a mistake in relying on the mother. However, "in termination of parental rights proceedings[,] each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005). Reunification with the mother would not necessarily mean reunification with the father. He needed to independently demonstrate his ability to parent M.D.W. appropriately. The father failed to engage in any services but claims that more time will allow him to procure steady employment and housing. In light of his history, we are not inclined to believe that his engagement as a full-time parent will improve sufficiently in a reasonable time. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). Accordingly, we deny the father's request for more time.

## IV.   *Disposition.*

Having considered the father's arguments concerning the statutory grounds, the child's best interests, and an extension of time, we find each without merit and affirm termination of his parental rights.

**AFFIRMED.**